IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANE HOPKINS,<br><br>                    Plaintiff,<br><br>       v.<br><br>CASSANDRA DICRISTI, et al.,<br><br>                    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>      Civil Action<br>    No. 13-5490 (JBS-KMW)<br><br>        **OPINION** |

APPEARANCES:

SHANE HOPKINS, Plaintiff pro se
#111265-C/684706
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

GREGORY R. BUENO, DEPUTY ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendants Cassandra DeCristi, Gary Lanigan,
Kenneth Nelson, Donna Sweeney, and Crystal Raupp.

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

     This matter comes before the Court on the motion of

Defendants Cassandra DeCristi,[1] Gary Lanigan, Kenneth Nelson,

Donna Sweeney, and Crystal Raupp ("State Defendants") to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Entry 58). Pro se

---

[1] Improperly pled as "DiCristi."

Plaintiff Shane Hopkins ("Plaintiff") filed opposition to Defendants' motion. (Docket Entry 60). This motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion shall be granted in part and denied in part.

## II.   BACKGROUND

### A. Procedural History

On September 12, 2013, Plaintiff filed this complaint pursuant to 42 U.S.C. § 1983 alleging his rights under the Interstate Agreement on Detainers ("IAD") and the United States Constitution were violated by Joseph Bondiskey, the Warden/Administrator of the Atlantic County Justice Facility ("ACJF"), and the State Defendants. (Docket Entry 1). He also filed a request for an order directing the State Defendants to conform to the provisions of the IAD by informing the Commonwealth of Pennsylvania that he wanted to resolve his pending charges in that state. (Docket Entry 2). Plaintiff withdrew this request on December 23, 2013 after Defendant DeCristi assisted Plaintiff with contacting the Delaware County Prosecutor's Office in Pennsylvania. (Docket Entry 12).

Defendant DeCristi filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment on April 16, 2014. (Docket Entry 23). On June 2, 2014, Plaintiff filed a Motion to Amend the Complaint. (Docket Entry

2

26). Magistrate Judge Karen M. Williams granted the motion and permitted the amended complaint to be filed on July 18, 2014. (Docket Entries 35 and 36). By Order dated September 16, 2014, this Court dismissed Defendant DeCristi's motion as moot due to the filing of the amended complaint. (Docket Entry 53).

The State Defendants filed the instant Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 23, 2014.[2] (Docket Entry 58). Plaintiff filed his opposition on October 9, 2014. (Docket Entry 60).

**B. Factual Background**

1. *Allegations in the Pleadings*

Plaintiff Shane Hopkins alleges he was arrested and detained in the ACJF on January 14, 2011, pending trial on burglary charges. (Docket Entry 36 ¶ 16). Shortly after Plaintiff's arrival, John Doe ACJF officials ran Plaintiff's name through the National Crime Information Center database and learned there were outstanding detainers against Plaintiff in Pennsylvania, Virginia, and South Carolina. (Docket Entry 36 at ¶¶ 17-18). An unidentified ACJF official informed Plaintiff about these charges on or about January 20, 2011. (Docket Entry

---

[2] This Court granted Defendant Bondiskey's motion to dismiss the amended complaint against him on March 31, 2015. (Docket Entry 67).

36 at ¶ 19). On that same date, Plaintiff requested "a list of all outstanding warrents [sic] and detainers" filed against him. (Docket Entry 36 at ¶ 20). Plaintiff received a response to his request on February 1, 2011, stating "records does not provide system checks of outstanding matters." (Docket Entry 36 at ¶ 21).

Plaintiff pled guilty to two counts of third-degree burglary, N.J. STAT. ANN. ¶ 2C:18-2 (West, Westlaw through 2015, c. 24); and two counts of third-degree theft, N.J. STAT. ANN. ¶ 2C:20-3 (West, Westlaw through 2015, c. 24), on March 2, 2011. (Docket Entry 36 at 39-45). As part of the plea bargain, the prosecutor agreed to recommend that "if extradited – [Hopkins] to be entitled to all lawful credit in NJ." (Docket Entry 36 at 41). On April 27, 2011, the trial court sentenced Plaintiff to three years on each count to run concurrently with each other and Plaintiff's Pennsylvania charges. (Docket Entry 36 at 43).

Plaintiff was transferred to the Central Reception and Assignment Facility ("CRAF") and South Woods State Prison ("SWSP") thereafter. (Docket Entry 36 at ¶¶ 28-30). Plaintiff received notification of the outstanding detainers against him at each facility. (Docket Entry 36 at ¶¶ 28-34). Plaintiff inquired of an unidentified SWSP social worker as to the meaning of the detainers, and was told that he would be extradited to

4

one of the states upon the conclusion of his New Jersey prison term. (Docket Entry 36 at ¶¶ 35-36).

During Plaintiff's time at SWSP, he was accepted into the Heating, Ventilation, and Air Conditioning ("HVAC") Training Program. (Docket Entry 36 at ¶ 37). When the instructor learned of the outstanding detainers against Plaintiff, however, he removed Plaintiff from the program as the program was meant for prisoners who were expected to be released within four years. (Docket Entry 36 at ¶ 38). Plaintiff also alleges he was denied minimum custody classification as the result of having the unresolved detainers. (Docket Entry 36 at ¶ 39).

On January 31, 2012 while Plaintiff was being housed at ACJF for a court appearance, Plaintiff escaped from custody. (Docket Entry 36 ¶ 42). He was captured and transferred to New Jersey State Prison ("NJSP") on February 1, 2012. (Docket Entry 36 at ¶¶ 43-44). Shortly after his arrival at NJSP, Plaintiff learned from an inmate paralegal that he could request resolution of his detainers under the IAD. (Docket Entry 36 at ¶ 45). After conducting some preliminary research, Plaintiff spoke with Defendant Raupp, a social worker at NJSP, regarding his desire to resolve his Pennsylvania detainers under the IAD. (Docket Entry 36 at ¶¶ 46-47). Defendant Raupp informed Plaintiff that NJSP did not arrange for prisoners to resolve their out-of-state charges, and that he would have to contact

the individual prosecutors himself. (Docket Entry 36 at ¶¶ 48-49). Plaintiff continued to ask Defendant Raupp how to resolve his Pennsylvania charges during the course of his incarceration at NJSP. (Docket Entry 36 ¶ 51).

On November 19, 2012, Plaintiff submitted an Inmate Remedy Form ("IRF") requesting a list of all detainers lodged against him and the prosecutors' contact information. (Docket Entry 36 at ¶ 52). NJSP's Classification Department responded with a list of the detainers and the relevant contact information. (Docket Entry 36 at ¶ 53). Plaintiff again asked Defendant Raupp for assistance in resolving his detainers on November 29, 2012, and the NJSP Classification Department responded with another list of Plaintiff's detainers, but no contact information. (Docket Entry 36 at ¶ 54). Defendant Raupp did not provide contact information for the Delaware County Prosecutor's Office until April 17, 2013. (Docket Entry 36 at ¶ 55). Plaintiff wrote to the Pennsylvania prosecutor but received no response. (Docket Entry 36 at ¶ 56).

Plaintiff contacted various New Jersey officials regarding his inability to resolve his detainers, including Defendant Warren, the NJSP Administrator at the time, and Defendant Lanigan, the Commissioner of the New Jersey Department of Corrections ("DOC"). (Docket Entry 36 at ¶¶ 57-58). Plaintiff additionally called the DOC's Office of the Ombudsman on June

16, 2013, in an effort to resolve his complaints. (Docket Entry 36 at ¶ 63). The Ombudsman's office responded via letter dated July 24, 2013, with a list of Plaintiff's detainers and a suggestion to submit another IRF. (Docket Entry 36 at ¶ 64). A few days later, Defendant Sweeney wrote to Plaintiff and indicated that Plaintiff's letter had been forwarded to Defendant DeCristi, who would interview him shortly in order to begin the process of resolving the detainers. (Docket Entry 36 at ¶ 65).

On July 28, 2013, Plaintiff wrote another letter to the Ombudsman's Office as he had still had not received any response from anyone at NJSP regarding his desire to resolve his detainers. (Docket Entry 36 at ¶ 69). He filed another IRF on July 29, 2013, (Docket Entry 36 at ¶ 70), and did not receive a response until September 4, 2013, (Docket Entry 36 at 65). In the meantime, Plaintiff sent another letter to Defendant Sweeney complaining about the lack of response from Defendant DeCristi. (Docket Entry 36 ¶ 72). Plaintiff wrote to Defendant DeCristi directly on August 10, 2013, and requested that she forward his request for resolution to the relevant Pennsylvania officials. (Docket Entry 36 ¶ 73; Docket Entry 36 at 68). He followed up this letter with an IRF on August 12, 2013. (Docket Entry 36 ¶ 74). Defendant DeCristi did not respond to Plaintiff's letter or IRF, but Defendant Sweeney wrote to Plaintiff on August 12, 2013

7

indicating that a member of Defendant DeCristi's staff would "be interviewing [Plaintiff] soon, to begin [his] demand under the IAD." (Docket Entry 36 at ¶ 76; Docket Entry 36 at 70).

Unsatisfied with this response, Plaintiff spoke with NJSP Administrator Defendant Nelson on August 15, 2013, regarding the difficulties incurred in pursuing his rights under the IAD. (Docket Entry 36 at ¶ 77). Defendant Nelson assured Plaintiff that Defendant DeCristi would "be told to take care of it." (Docket Entry 36 at ¶ 77). Plaintiff did not receive responses to his IRFs, except in the form of verbal assurances that his concerns would be addressed by the proper people. (Docket Entry 36 at ¶ 80). Plaintiff filed the instant action on September 12, 2013 after continuing to receive no assistance from the State Defendants. (Docket Entry 1). Shortly thereafter, Plaintiff received responses to two previously filed IRFs indicating he would be interviewed. (Docket Entry 36 at ¶¶ 82-83). On November 26, 2013, however, Plaintiff wrote to Defendant Sweeney again, stating that no further action on his IAD requests had been taken. (Docket Entry 36 ¶ 85).

Plaintiff was finally interviewed by Defendant DeCristi on or about December 3, 2013. (Docket Entry 36 at ¶ 86). Defendant DeCristi repeatedly denied responsibility for completing IAD requests and told Plaintiff that he had to do it himself. (Docket Entry 36 at ¶ 87). She further stated that Plaintiff was

"'brought here because [he] escaped and [he was] not eligible to go to Pennsylvania.'" (Docket Entry 36 at ¶ 87). By letter dated December 4, 2013, NJSP informed the Delaware County Prosecutor that Plaintiff requested disposition of his Pennsylvania charges under the IAD. (Docket Entry 36 at 74). Plaintiff was extradited to Pennsylvania on January 30, 2014, and was convicted and sentenced on April 4, 2014. (Docket Entry 36 at ¶ 97). On May 7, 2014, Plaintiff was returned to New Jersey. (Docket Entry 36 at ¶ 97).

In his amended complaint, filed after the resolution of the Pennsylvania charges, Plaintiff asserts Defendants Nelson, DeCristi, and John Doe officials violated the IAD by failing to promptly inform him of his right to request disposition of the out-of-state charges, and by delaying relying his requests to Pennsylvania once made.[3] He further asserts Defendant DeCristi violated his rights to Due Process and Equal Protection under the Fourteenth Amendment, his right of access to the courts under the First Amendment, and his right to a speedy trial under the Sixth Amendment, and the Eighth Amendment by acting with deliberate indifference towards his constitutional rights.

---

[3] Plaintiff also claimed Defendant Warren violated the IAD, as well as acted with deliberate indifference towards Plaintiff's IAD rights, and violated his Due Process, Equal Protection, and Speedy Trial rights. It appears Defendant Warren was never served with the amended complaint. (Docket Entry 44).

(Docket Entry 36 at 28). He claims Defendant Lanigan failed to train and supervise Defendants DeCristi and Does in the requirements of the IAD, and his "failure to exercise his authority to investigate and rectify repeated violations of [the IAD] after being notified of the violations amounts to deliberate indifference along with violations of the Plaintiff[']s rights to Due Process under the 8th and 14th Amendments . . . ." (Docket Entry 36 at 29). Plaintiff further alleges Defendants Nelson, Sweeney, and Raupp acted with deliberate indifference to his IAD rights in violation of the Eighth Amendment. (Docket Entry 36 at ¶ 81-82).

   2.   *Defendants' Motions*

    The State Defendants assert Plaintiff's complaint should be dismissed on several grounds. They first argue that all claims against Defendants DeCristi and Lanigan in their official capacities should be dismissed as they are not "persons" within the meaning of § 1983. (Docket Entry 58-1 at 1). They also argue that Plaintiff has failed to set forth a claim that the State Defendants violated the First, Sixth, Eighth, and Fourteenth Amendments. (Docket Entry 58-1 at 17-29). Defendant Lanigan argues that the claims against him should be dismissed as they are based on an impermissible theory of *respondeat superior*. (Docket Entry 58-1 at 29). Finally, they argue that Plaintiff's

demands for punitive damages should be dismissed. (Docket Entry 58-1 at 31).

### 3. Plaintiff's Response

In his response to Defendants' motion, Plaintiff asserts only violations of the IAD and the Sixth, Eighth, and Fourteenth Amendments. He further asserts that Defendant Lanigan failed to supervise Defendants DeCristi and Sweeney, making him personally liable to Plaintiff. (Docket Entry 60 at 17).

## III. STANDARD OF REVIEW

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). However "pro se litigants still must allege sufficient facts in their

complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional and statutory rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**IV.   DISCUSSION**

**A. Defendants Not "Persons" Under § 1983**

Defendants Lanigan and DeCristi assert that all claims against them in their official capacities must be dismissed as they are not "persons" within the meaning of § 1983. A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the

official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In this instance, a suit against Defendants Lanigan and DeCristi in their official capacities would in actuality be a suit against the DOC and NJSP.  Neither the DOC nor NJSP are "persons" subject to suit under § 1983. *See Adams v. Hunsberger,* 262 F. App'x 478, 481 (3d Cir. 2008) (per curiam) (District Court properly dismissed Section 1983 claims against state department of corrections as it is not a "person" within the meaning of Section 1983) (citing *Will,* 491 U.S. at 71); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983).

Defendants' motion to dismiss the claims against Defendant Lanigan and DeCristi in their official capacities is granted with prejudice. Individual liability of those two defendants must still be assessed, however.

## B. Interstate Agreement on Detainers

The IAD is an interstate compact entered into by the majority of states, including New Jersey, for the purposes of "creat[ing] uniform procedures for resolving one State's pending charges against an individual imprisoned by another State." *United States v. Hornick*, 491 F. App'x 277, 281–82 (3d Cir. 2012) (citing *Alabama v. Bozeman,* 533 U.S. 146, 148 (2001); *New*

13

*York v. Hill,* 528 U.S. 110, 111 (2000)), *cert. denied*, 133 S. Ct. 1290 (2013); *see also* 18 U.S.C. App. 2, § 2; N.J. STAT. ANN. § 2A:159A-1 *et seq.* (West, Westlaw current through L. 2015, c. 61). Article III of the IAD extends to "person[s] . . . enter[ing] upon a term of imprisonment in a penal or correctional institution of a party State," and against whom a detainer is lodged by another state, the right to demand final disposition on the pending charges within 180 days of release to the charging jurisdiction unless good cause exists for a continuance. 18 U.S.C. App. 2, § 2, Art. III(a). As a statute of the United States, violations of the IAD are redressable under § 1983. *See Cuyler v. Adams*, 449 U.S. 433, 450 (1981); *see also Shack v. Attorney Gen. of the State of Pennsylvania*, 776 F.2d 1170, 1173-74 (3d Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986); *Coffey v. N. Carolina Dep't of Corr.*, 846 F.2d 70 (4th Cir. 1988) (per curiam) (unpublished). Construing the complaint liberally in Plaintiff's favor, *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992), Plaintiff has set forth sufficient facts to asserts claims against Defendants Raupp, DeCristi, Nelson, and Sweeney for violations of the IAD.[4]

The IAD imposes obligations upon prison officials to assist in the orderly and efficient transfer of prisoners for

---

[4] Defendant Lanigan's liability is assessed separately *infra* Part IV.H.

disposition of out-of-state detainers. Upon learning of a
detainer lodged against a prisoner in their custody, the
official having custody of a prisoner "*shall promptly inform*
[the prisoner] of the source and contents of any detainer lodged
against him and . . . of his right to make a request for final
disposition of the indictment, information, or complaint on
which the detainer is based." 18 U.S.C. App. 2, § 2, Art. III(c)
(emphasis added). The IAD further provides:

> *Any request for final disposition made by a prisoner .
> . . shall operate as a request for final disposition of
> all untried indictments, informations, or complaints .
> . . .* The warden, commissioner of corrections, or other
> official having custody of the prisoner *shall forthwith
> notify all appropriate prosecuting officers and courts*
> in the several jurisdictions within the State to which
> the prisoner's request for final disposition is being
> sent of the proceeding being initiated by the prisoner.

18 U.S.C. App. 2, § 2, Art. III(d) (emphasis added).

The Court rejects Defendants' assertion that Plaintiff did
not raise violations of the IAD itself until his opposition
papers. Accepting the facts alleged in the complaint as true,
Plaintiff made several requests for disposition of his
Pennsylvania charges over the course of two years. Under the
terms of the IAD, the officials of NJSP were required to
promptly inform the Pennsylvania prosecutors and courts of
Plaintiff's demand. *Ibid.* Defendants Raupp, DeCristi, Nelson,
and Sweeney were each personally informed by Plaintiff that he
wanted to resolve the out-of-state charges against him, yet no

action was taken until this lawsuit was initiated, over two years since Plaintiff's initial inquiry as to the meaning of the detainers. (*See* Docket Entry 36 ¶¶ 34-35). Plaintiff "may be unable to prove any actual damages flowing from the alleged failure to inform him of his rights[,]" *Coffey*, 846 F.2d at 70, however he has pled sufficient facts to withstand the present motion to dismiss. The motion to dismiss this claim is denied as to Defendants Raupp, DeCristi, Nelson, and Sweeney.

## C. Denial of Access to the Courts

Plaintiff further claims Defendants' violations of the IAD constituted a violation of his right to access the courts under the First and Fourteenth Amendments. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). "To establish a cognizable claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a claim. A prisoner can show an actual injury only when a nonfrivolous, arguable claim is lost." *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 352-54). Additionally, "the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement [and] a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim." *Ibid*. (internal citations omitted); *see also*

16

*Lewis*, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

The amended complaint only asserts Defendant DeCristi impaired Plaintiff's access to the courts, (Docket Entry 36 at 28), however even interpreting Plaintiff's claims liberally to include all the State Defendants, he has failed to set forth a viable claim. The complaint may be broadly read to constitute an attack on the conditions of his confinement, but Plaintiff has not identified what claim was lost as a result of Defendants' conduct. Indeed, the record of this matter indicates that Plaintiff has not lost any opportunity: his Pennsylvania charges have been resolved, and he has been actively and competently pursuing this litigation before this Court, including motion practice for injunctive relief. (*See, e.g.*, Docket Entry 2). In other words, Plaintiff has failed to demonstrate any prejudice resulting from Defendants' alleged violations. His access to the courts claim is therefore dismissed in its entirety for failure to state a claim. Fed. R. Civ. Pro. 12(b)(6).

**D. Due Process**

Plaintiff asserts Defendants violated his Fourteenth Amendment due process rights by their alleged violations of the

17

IAD.[5]  The Third Circuit has consistently noted that a violation of the IAD "is not an infringement of a constitutional right." *Cooney v. Fulcomer*, 886 F.2d 41, 46 n.8 (3d Cir. 1989) (citing *Diggs v. Owens*, 833 F.2d 439, 442 (3d Cir. 1987), *cert. denied*, 485 U.S. 979 (1988)); *see also United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979), *cert. denied*, 449 U.S. 847 (1980); *Camp v. United States*, 587 F.2d 397, 400 (8th Cir. 1978) ("[T]he IAD amounts to nothing more than a statutory set of procedural rules which clearly do not rise to the level of constitutionally guaranteed rights."). Plaintiff's "due process rights are not implicated when he asserts that [the State Defendants] violated various provisions of the IAD." *Cooney*, 886 F.2d at 46 n.8. This claim must therefore be dismissed.

**E. Equal Protection**

---

[5] In his opposition to Defendants' motion, Plaintiff changes his due process challenge to assert New Jersey's administrative provision outlining the procedures correctional facilities are to take upon receiving a detainer from another state, N.J.A.C. § 10A:10-4.4, "constitutes a state created liberty interest . . . ." (Docket Entry 60 at 13). This is a wholly different claim than is contained in the amended complaint, which bases the Due Process claim on violations of the federal IAD. (*See, e.g.*, Docket Entry 1 at 28). A complaint cannot be amended or supplemented by way of an opposition brief. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). The proper way to add this claim is by a motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a) and Local Civil Rule 7.1.

Plaintiff asserts Defendants' failure to timely apprise him of the detainers against him and relay his demands for resolution to the proper Pennsylvania authorities violated his Fourteenth Amendment right to Equal Protection. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See ibid.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff cites to paragraphs 102, 103, and 104 as evidence that his complaint pleads sufficient factual matter. (Docket Entry 60 at 13). Those paragraphs state:

> When detainers are lodged against other inmates in New Jersey or in any other state that signed the [IAD] they will be notified of the detainer, its contents, and what their rights are.

> As a result of Defendants['] failure to notify the Plaintiff of his rights to request final disposition the Plaintiff suffered extensive delays in the resolution of outstanding detainers and was forced to learn what his rights under the [IAD] [were] on his own.

> The Plaintiff has the right to have outstanding criminal charges in other jurisdictions brought to a final resolution.

(Docket Entry 36 ¶¶ 102-04). Plaintiff also cites Defendant DeCristi's statement that he was "'brought [to NJSP] because [he] escaped and [he was] not eligible to go to Pennsylvania.'" (Docket Entry 36 ¶ 87).

It is unclear from the face of Plaintiff's complaint who are the similarly situated persons to whom Plaintiff compares his treatment.[6] "To be 'similarly situated,' parties must be 'alike in all relevant aspects.' At the motion to dismiss stage, [Plaintiff] must allege facts sufficient to make plausible the

---

[6] The complaint itself would suggest that out of all the inmates in the country, presumably including those with convictions for escape, only Plaintiff is being denied the ability to resolve his out-of-state detainers. (Docket Entry 36 ¶ 102). His opposition papers attempt to narrow that field to only those inmates in the custody of the New Jersey DOC. (Docket Entry 60 at 13).

existence of such similarly situated parties." *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)); *see also Mann v. Brenner*, 375 F. App'x 232, 238-39 (3d Cir. 2010) (finding that district court properly dismissed "class of one" equal protection claim where plaintiff's allegations amounted "to nothing more than 'a formulaic recitation of the elements' of a constitutional discrimination claim."). Plaintiff's complaint is devoid of any such facts, as well as facts suggesting each defendant *intentionally* discriminated against him. This claim must be dismissed at this time, however Plaintiff may seek leave to amend this claim in order to address the deficiencies if he presents a factual basis for doing so.

## F. Speedy Trial

Plaintiff further alleges Defendant DeCristi's violations of the IAD led to a violation of his Sixth Amendment right to a Speedy Trial on his Pennsylvania charges. Defendant disputes the merits of that argument, but this Court may not reach the merits of Plaintiff's claim as it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

21

> been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87. The Court similarly noted in *Wilkinson v. Dotson* that a state prisoner's § 1983 claims are "barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." 544 U.S. 74, 81–82 (2005) (emphasis in original).

If this action were to result in a determination that Defendants violated Plaintiff's right to a speedy trial on his Pennsylvania charges, "the remedy must be discharge from custody with prejudice to retrial." *Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir. 1987); *see also Strunk v. United States,* 412 U.S. 434, 440 (1973) (holding dismissal is the "only possible remedy" for violations of the right to a speedy trial).[7] A

---

[7] This distinguishes Plaintiff's claim that Defendants violated the IAD, which may go forward at this time, from his claim that said violations of the IAD resulted in a violation of the Sixth Amendment, which is barred under *Heck*. Even if Plaintiff were to establish that Defendants violated the IAD's notice provisions, he would not be entitled to dismissal of his Pennsylvania charges. *See Fex v. Michigan*, 507 U.S. 43, 49-52 (1993) (holding IAD's 180-day "clock" does not begin until prosecutor receives

determination that Defendants violated Plaintiff's speedy trial rights on his Pennsylvania charges would therefore necessarily imply the Pennsylvania convictions are invalid. Absent proof that his Pennsylvania convictions have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," Plaintiff cannot seek relief under § 1983 for any alleged violations of his speedy trial rights. *Heck*, 512 U.S. at 487. This claim must be dismissed in its entirety.  Plaintiff may not seek to amend his Speedy Trial claim unless he is able to first demonstrate that his Pennsylvania convictions have been set aside, as above.

## G. Eighth Amendment Deliberate Indifference

Plaintiff's complaint additionally alleges Defendants DeCristi, Nelson, Sweeney, and Raupp acted with deliberate

---

demand from sending state); *United States v. Lualemaga*, 280 F.3d 1260, 1263-64 (9th Cir. 2002) ("The IAD does not state what remedy, if any, is available if the prisoner is not informed of his right to demand a trial. This suggests dismissal is not an appropriate sanction for such a violation."), *cert. denied*, 536 U.S. 949 (2002); *see also United States v. Walker*, 255 F.3d 540, 542-43 (8th Cir. 2001)**;** *United States v. Pena-Corea*, 165 F.3d 819, 821-22 (11th Cir. 1999); *Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998) ("[D]ismissal because of negligence on the part of the sending state is not a part of the IAD"), *mod. on other grounds*, 149 F.3d 1226 (5th Cir.1998); *Pero v. Duffy*, 2013 WL 6579758 at *10 (D.N.J. Dec. 16, 2013). Therefore his IAD claim may go forward while his Sixth Amendment claim may not.

indifference to his Eighth Amendment rights. It appears from the face of the complaint that Plaintiff is asserting the conditions of his confinement violate the Eighth Amendment's proscription of cruel and unusual punishment.

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Gause v. Diguglielmo*, 339 F. App'x 132, 134 (3d Cir. 2009). "To make out an Eighth Amendment claim, the prisoner must show that the alleged deprivation was sufficiently serious and that the prison official acted with 'deliberate indifference to inmate health and safety.'" *Gause*, 339 F. App'x at 134 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'[D]eliberate indifference' is 'the equivalent of recklessly disregarding [a] risk' of serious harm to the prisoner." *Ibid.* (quoting *Farmer*, 511 U.S. at 836). Plaintiff has not shown that any violations of the IAD rose to the level of being "sufficiently serious" to make out an Eighth Amendment violation. Furthermore, "a successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001). Plaintiff has not shown that the actions of the State Defendants acted with indifference,

24

deliberate or otherwise, to a previously *known* risk to his *health or safety*.

Moreover, Plaintiff specifically alleges Defendants Nelson and Sweeney violated the Eighth Amendment by failing to exercise their "authority to investigate and rectify repeated violations" of the IAD. (Docket Entry 36 at 30). He would therefore appear to be asserting a form of supervisory liability as to those defendants, specifically the failure to supervise those below them. The Third Circuit has set forth a four-part test for determining whether an official may be held liable on a claim for a failure to supervise:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Plaintiff has not established that any actions by the State Defendants resulted in the violation of a constitutional right,[8] therefore he cannot show that any policy

---

[8] As previously noted, a violation of the IAD "is not an infringement of a constitutional right." *Cooney v. Fulcomer*, 886

or procedure created an unreasonable risk of constitutional violations. Plaintiff's Eighth Amendment claims must be dismissed as failing to state a claim upon which relief may be granted.

## H. Defendant Lanigan

Defendant Lanigan, the DOC Commissioner, argues the claims against him must be dismissed as they are premised on an impermissible theory of *respondeat superior*. Plaintiff opposes, arguing that Defendant Lanigan has been designated as the official in charge of overseeing compliance with the IAD, and therefore he is personally responsible supervising and training those tasked with addressing prisoners' requests for resolution of out-of-state detainers. (Docket Entry 60 at 17).

A supervisory defendant may be liable if he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes*, 766 F.3d at 316. "Claims alleging a failure to train, failure to discipline, or failure to supervise are a subset of such policy or practice liability." *Womack v. Moleins*, 2015 WL 420161 at *3 (D.N.J. Jan. 30, 2015) (citing *Barkes*, 766 F.3d at 316). "A pattern of similar constitutional violations by untrained employees is 'ordinarily

---

F.2d 41, 46 n.8 (3d Cir. 1989) (citing *Diggs v. Owens*, 833 F.2d 439, 442 (3d Cir. 1987), *cert. denied*, 485 U.S. 979 (1988)).

necessary' to demonstrate deliberate indifference for purposes
of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360
(2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v.
Brown*, 520 U.S. 397, 409 (1997)). "Policymakers' 'continued
adherence to an approach that they know or should know has
failed to prevent tortious conduct by employees may establish
the conscious disregard for the consequences of their action —
the "deliberate indifference" — necessary to trigger'"
supervisory liability. *Ibid.* (quoting *Bryan Cty.,* 520 U.S. at
407). "Without notice that a course of training is deficient in
a particular respect, decisionmakers can hardly be said to have
deliberately chosen a training program that will cause
violations of constitutional rights." *Ibid.*

Even if violations of the IAD were considered
constitutional violations, Plaintiff has not established there
has been a pattern of similar violations such that would provide
notice to Defendant Lanigan that NJSP required training in IAD
matters.[9] His failure to train claim therefore is legally
insufficient.

His failure to supervise claim against Defendant Lanigan is
likewise deficient. Plaintiff has not established that any

---

[9] Indeed according to Plaintiff's Equal Protection argument, he
is the only inmate in the State of New Jersey who has had
difficulty in resolving his out-of-state detainers.

constitutional violations occurred, and therefore he cannot show that any policy or procedure created an unreasonable risk of constitutional violations. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042 (2015). He also has not established that Defendant Lanigan knew of any risk created by the policies. The fact that Plaintiff sent letters to Defendant Lanigan *after* the alleged violations does not indicate Defendant Lanigan was aware of any risk *before* the alleged violations. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001). It is unnecessary to reach the final two factors as Plaintiff has not established the first two factors under the Third Circuit's test. The failure to supervise claim against Defendant Lanigan must also be dismissed.

Government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). State actors are under § 1983 liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012*).* As Plaintiff has not met the legal standard for imposing supervisory liability under a failure to train or failure to supervise theory, he has failed to sufficiently allege Defendant Lanigan's individual liability. The claims against Defendant Lanigan must be dismissed.

28

## I. Punitive Damages

Defendants assert Plaintiff's claim for punitive damages must be dismissed as he has failed to establish any misconduct was motivated by "evil motive or intent." (Docket Entry 58-1).

Although the Court agrees Plaintiff has not sufficiently alleged evil motive or intent, it is not necessary for Plaintiff to do so in order to recover punitive damages. "'[T]he defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.'" *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006) (quoting *Savarese v. Agriss,* 883 F.2d 1194, 1204 (3d Cir. 1989)). Plaintiff's complaint does not allege good grounds that Defendants acted with "reckless or callous indifference to the federally protected rights of others." *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003). As Plaintiff may seek leave to amend his complaint to address other deficiencies, however, he may be able to set forth a basis for punitive damages in the future. The dismissal of Plaintiff's request for punitive damages is therefore without prejudice.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted in part and denied in part.  If Plaintiff seeks to cure any of the deficiencies in his pleadings noted herein, he may attempt to do so by filing a motion to amend, attaching a proposed Second Amended Complaint, within thirty (30) days of the entry of this Opinion and Order.  An appropriate order shall follow.


____**June 30, 2015**____                    ____**s/ Jerome B. Simandle**____
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge